IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 22-cv-00803-CMA-SKC

LINDA DIETER, and
STEVEN DIETER,

    Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    Defendant.

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

    This matter is before the Court on Plaintiffs Linda Dieter and Steven Dieter's Motion for Partial Summary Judgment on their first claim for declaratory relief. (Doc. # 18.) For the following reasons, the Court grants the Motion.

### I.    BACKGROUND

    This is an insurance case relating to damage to Plaintiffs' home as a result of the partial collapse of the house next door. Unless otherwise indicated, the following facts are undisputed for purposes of this summary judgment motion.

    At all times relevant, Plaintiffs owned a two-story, west-facing home in Denver, Colorado ("Property"). (Doc. # 18 at 7.) Next door, directly north of the Property, sits another two-story, west-facing home ("Neighboring Property"). (Doc. # 18-1 at 14.) A

concrete drainage swale runs between the properties. (*Id.*) At its closest point, the Neighboring Property sits approximately five feet from the Property. (*Id.*)

Plaintiffs insured the Property with Defendant American Family Mutual Insurance Company ("AmFam") under a homeowner's insurance policy, No. 05-DD5524-01 ("Policy"). (Doc. # 18 at 8). The Policy provides coverage for "sudden and accidental direct physical loss" to the Property unless the loss is subject to an exclusion from coverage. (Doc. # 18-1 at 98.) Among other exclusionary provisions, the Policy contains an "Earth Movement" exclusion:

> We do not cover loss consisting of, or caused directly or indirectly by any of the following Exclusions. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These Exclusions apply even if the loss event results in widespread damage. These Exclusions apply whether the loss is caused by natural, man-made, or animal forces. These Exclusions apply whether the loss occurs as the result of one or any combination of Exclusions:
>
> 1. Earth Movement.
>    a. This means any loss caused by, resulting from, contributed to, or aggravated by:
>       (1) **earthquake**;
>       (2) landslide, rockslide, avalanche, subsidence, sinkhole, erosion, mudflow, mudslide, lahar;
>       (3) earth sinking, rising, shifting, expanding, contracting;
>       (4) the eruption, explosion, or effusion of a volcano; or
>       (5) any of the following:
>          (a) site selection;
>          (b) machines;
>          (c) vehicles;
>          (d) blasting;
>          (e) mining;
>          (f) fracking;
>          (g) sequestration of carbon dioxide or any other gas, solid, or liquid;
>          (h) earth moving, excavation, fill, or compaction.
>    b. This Exclusion applies whether or not Earth Movement:
>       (1) takes place at or away from the location of damaged property;

        (2) combines with water, snow, ice, or rain; or
        (3) is sudden, repeated, interrupted, gradual, or slow.
   c.  However, we cover ensuing loss only if such loss is caused by:
        (1) fire;
        (2) theft; or
        (3) explosion other than the explosion of a volcano.

(*Id.* at 100–01.) The Policy defines "Earthquake" as:

> **Earthquake**. This means a shaking or trembling of the earth that is volcanic or tectonic in origin. **Earthquake** consists of one or more scientifically measurable tremors or shocks. It includes land shock waves or tremors before, during, or after a volcanic eruption.

(*Id.* at 95.)

On February 1, 2020, the Neighboring Property partially collapsed. (Doc. # 18 at 9.) The parties agree that the collapse of building materials on the Neighboring Property caused vibrations in the soil. (*Id.*; Doc. # 21 at 7.) Plaintiffs claim that these vibrations, along with a "direct transfer of force" carried through the concrete swale between the houses, caused damage to the Property, including structural damage, cracking, and wall gapping. (Doc. # 1 at ¶¶ 13, 19; Doc. # 18 at 9.) AmFam disputes whether and to what extent the Property was damaged by vibrations in the soil and/or force transferred through the concrete swale between the houses. (Doc. # 21 at 7–8.) Engineers hired by Plaintiffs and AmFam concluded that vibrations transferred through the earth played a role in causing damage to the Property, but they disagreed as to the extent of the damage and the causes of particular areas of damage. (*Id.* at 2.)

Plaintiffs notified AmFam of the loss on February 6, 2020. (Doc. # 18-1 at 142–43.) On November 16, 2020, AmFam denied Plaintiffs' claim. (*Id.* at 145–48.) In its letter denying coverage, AmFam cited three exclusions from the Policy, including the Earth

Movement exclusion.[1] (*Id.* at 146). Specifically, AmFam pointed to subsections (a)(3) ("earth sinking, rising, shifting, expanding, contracting") and (a)(5)(h) ("earth moving, excavation, fill, or compaction") of the Earth Movement exclusion. (*Id.*) Accordingly, AmFam denied payment for any claimed physical damage to the Property. (Doc. # 21 at 10.) Plaintiffs assert that they have paid approximately $45,000 out of pocket for necessary repairs. (Doc. # 18 at 2.)

Plaintiffs initiated this action on April 1, 2022. (Doc. # 1.) They allege four claims for relief against AmFam: (1) declaratory relief that the Earth Movement exclusion is not applicable to the loss in this case; (2) breach of contract; (3) statutory unreasonable delay or denial of benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and -1116; and (4) first-party bad faith.

On June 29, 2022, Plaintiffs filed the instant Motion for Partial Summary Judgment on their first claim for declaratory relief. (Doc. # 18.) AmFam filed a Response opposing the Motion and requesting that the Court enter judgment in AmFam's favor on Plaintiffs' claim for declaratory relief. (Doc. # 21.) Plaintiffs timely submitted a Reply (Doc. # 24), and the matter is now ripe for review.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper

---

[1] AmFam asserts that it denied coverage under several coverage exclusions (six in total) set forth in the Policy. (Doc. # 21 at 2.) Because the instant motion requests partial summary judgment only with respect to the Earth Movement exclusion, the Court confines its summary and analysis to the facts relevant to that exclusion.

4

disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a

5

verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

## III.  DISCUSSION

The sole issue presented in this Motion is a matter of insurance policy interpretation: whether the Policy bars recovery for damage caused by vibrations in the soil induced by the collapse of the Neighboring Property. The Court therefore begins by reviewing the standard for interpreting insurance policies.

### A.  INTERPRETATION OF INSURANCE POLICIES UNDER COLORADO LAW

In a diversity case such as this, the Court applies Colorado law and interprets insurance policies as a Colorado court would. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1286 (10th Cir. 2006). Because the Colorado Supreme Court has not expressly addressed the specific issue raised in this action, the Court must predict how that court would rule. *See Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) ("Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do.").

Under Colorado law, "[i]nsurance policies are subject to contract interpretation." *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1050 (Colo. 2011). Insurance policies "must be given effect according to the plain and ordinary meaning of their terms." *Id.* at 1051 (quoting *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 59 (Colo. 1990) (emphasis removed)). "In determining the plain and ordinary meaning of a term in an insurance policy, the Colorado Supreme Court has eschewed the use of 'technical

readings' and instead looks to 'what meaning a person of ordinary intelligence would attach to' a policy term." *Sullivan v. Nationwide Affinity Ins. Co. of Am.*, 842 F. App'x 251, 254 (10th Cir. 2021) (unpublished) (quoting *Bailey*, 255 P.3d at 1051).

Accordingly, Colorado courts honor "the doctrine of reasonable expectations." *Bailey*, 255 P.3d at 1048. Pursuant to this doctrine, courts will not enforce an exclusion provision "where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue." *Id.* at 1050. The court must consider the policy as a whole, rather than reading provisions in isolation. *See id.* at 1051 (citing *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)). If, based on how an ordinary, objectively reasonable insured would read the policy, "the question of whether certain coverage exists is 'susceptible to more than one reasonable interpretation,'" then "the coverage provisions are ambiguous" and must "be construed against the insurer as the drafter of the policy." *Id.* (quoting *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005)). Whether ambiguity exists "is always an objective test": Policy terms "should be read in the sense in which the insurer had reason to believe they would be interpreted by the ordinary reader and purchaser." *Id.* (quoting *Davis v. M.L.G. Corp.*, 712 P.2d 985, 989 (Colo. 1986)). However, the doctrine "does not contemplate the expansion of coverage on a general equitable basis." *Sullivan*, 842 F. App'x at 254 (quoting *Bailey*, 255 P.3d at 1054).

The insurer bears the burden of establishing that an exclusion is not subject to any other reasonable interpretation. *See Hecla Min. Co. v. N.H. Ins. Co.*, 811 P.2d

1083, 1090 (Colo. 1991). If an insurer shows that an exclusion applies, the burden then shifts back to the insured to prove the applicability of an exception to the exclusion. *See Leprino Foods*, 453 F.3d at 1287. "Any exclusion must be clear and specific to be enforceable." *Id.* (quoting *Fire Ins. Exchange v. Bentley*, 953 P.2d 1297, 1301 (Colo. App. 1998)).

**B.     ANALYSIS**

The parties dispute whether the Earth Movement exclusion bars coverage for damage to an insured building caused by "soil vibrations" induced by the collapse of a neighboring property. Plaintiffs contend that a reasonable insured would understand the Policy to provide coverage because the Earth Movement exclusion does not unambiguously exclude damage caused by "soil vibrations" and is susceptible to multiple reasonable interpretations. (Doc. # 18 at 19.) In response, AmFam argues that the Policy plainly excludes coverage for damage caused by any "earth movement," including soil vibrations. (Doc. # 21 at 11.)

This question presents a close call. However, after carefully reviewing the language of the Policy, the parties' briefing, and all applicable law, the Court concludes that the Earth Movement exclusion does not unambiguously exclude coverage for soil vibrations stemming from the collapse of a neighboring building. The Court must therefore construe the exclusion in favor of coverage. *See Sachs v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010) (noting that "ambiguous coverage provisions in an insurance contract are liberally construed in favor of the insured").

Beginning with the plain language of the Policy, the Court agrees with Plaintiffs that the Earth Movement exclusion does not mention "soil vibrations." Rather, it identifies a finite list of activities or events, several of which are clearly inapplicable to the loss in this case (*e.g.*, (1) earthquake; (2) landslide, rockslide, avalanche, subsidence, sinkhole, erosion, mudflow, mudslide, lahar; (4) the eruption, explosion, or effusion of a volcano; (5)(a) site selection, (b) machines, (c) vehicles, (d) blasting, (e) mining, (f) fracking, and (g) sequestration of carbon dioxide or any other gas, solid, or liquid). (Doc. # 18-1 at 100.) The parties appear to agree that a reasonable insured would not understand any of these events or activities in isolation to encompass soil vibrations induced by the collapse of the house next door.

At issue, then, is whether the loss is excluded by the two specific provisions cited by AmFam: subsections (3) ("earth sinking, rising, shifting, expanding, contracting") and (5)(h) ("earth moving, excavation, fill, or compaction"). AmFam contends that soil vibrations are clearly included in the terms "earth . . . shifting" and "earth moving." (Doc. # 21 at 12, 18.) In support, AmFam points to several cases in which courts broadly interpreted earth movement exclusions, including a case from this district in which United States District Judge Marcia S. Krieger observed that "'vibrations' transmitted through the ground . . . would certainly constitute 'shifting' of the earth" under the exclusion. *High St. Lofts Condo. Ass'n, Inc. v. Am. Fam. Mut. Ins. Co.*, 821 F. Supp. 2d 1235, 1242 (D. Colo. 2011); *see also Sullivan*, 842 F. App'x at 255 (interpreting the phrase "[a]ny other earth movement including earth sinking, rising, or shifting" to exclude coverage for damage caused by rockfall). AmFam urges the Court to follow

9

these cases and broadly construe the language of the Earth Movement exclusion to conclude that the Policy excludes coverage for any damage caused by soil vibrations.

The Court disagrees that broad interpretation is appropriate in this instance. Significantly, the Earth Movement exclusion in this case lacks inclusive language or catch-all terms that signal to the Court (or to the reasonable insured) that the exclusion should be broadly construed to include unspecified events or activities. This case is therefore distinguishable from the cases cited by AmFam, which uniformly address exclusionary provisions that contain inclusive or open-ended language such as "any" or "including, but not limited to." *See, e.g.*, *Bulinski v. State Farm Fire & Cas. Co.*, No. 16-cv-02066-RPM, 2017 WL 2459751, at *1 (D. Colo. June 7, 2017) "Earth movement **includes but is not limited to** earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection **or any other** external forces." (emphases added)); *Parker v. Safeco Ins. Co. of Am.*, 376 P.3d 114, 127 (Mont. 2016) (same); *Stewart v. Preferred Fire Ins. Co.*, 477 P.2d 966, 968 (Kan. 1970) (addressing an earth movement exclusion containing the phrase "including but not limited to"). Unlike the policies analyzed in these cases, the instant Earth Movement exclusion contains no inclusive or catch-all language inviting broad interpretation.

Nonetheless, AmFam asserts that subsection (3), "earth sinking, rising, shifting, expanding, contracting," serves as a "broad catch-all" to include any types of earth movement not explicitly referenced elsewhere in the exclusion. (Doc. # 21 at 17–18.) AmFam points to the Tenth Circuit's recent decision in *Sullivan*, in which the court was

tasked with deciding whether an earth movement exclusion, which did not mention "rockfall," should be broadly construed to exclude coverage for such loss. 842 F. App'x at 253. Like the other cases cited by AmFam, *Sullivan* featured a policy that broadly defined "earth movement," in part, as earthquake, landslide, subsidence, or "**[a]ny other earth movement** including earth sinking, rising, or shifting." *Id.* (emphasis added). The Tenth Circuit determined that this inclusive language sufficed to exclude coverage for damage caused by rockfall. *Id.* at 260. The court reasoned that "the examples of earth movement in the exclusion, together with the catch-all 'any other earth movement' provision, convince us that the exclusion was 'intended to be broadly inclusive of all other natural materials that comprise the surface of the earth, including rocks and soil.'" *Id.* at 257 (quoting *Parker*, 376 P.3d at 119). *Sullivan* thus weighs against AmFam's argument: In the absence of any "catch-all" provision, there is nothing to convince the Court that the Earth Movement exclusion was "intended to be broadly inclusive" of things like soil vibration caused by the collapse of the house next door. *Id.*

Despite the distinguishable language of the policy in *Sullivan*, AmFam contends that *Sullivan* is instructive because the Tenth Circuit "held that the nearly identical Earth Movement Exclusion language of 'sinking, rising, shifting, expanding or contracting of earth' was substantially similar to the policy stating, 'any other earth movement.'" (Doc. # 21 at 17) (quoting *Sullivan*, 842 F. App'x at 259). This is a mischaracterization of the case. While the Tenth Circuit did favorably compare the language of "sinking, rising, shifting, expanding or contracting of earth" from *Kresge v. State Farm Fire & Cas. Co.*, 2011CV008352, 2012 WL 8499731, at *1 (Colo. Dist. Ct. Nov. 4, 2012), as

11

"substantially similar" to the "catch-all 'any other earth movement' clause" before the court in *Sullivan*, this comparison did not constitute a "holding" that the language "sinking, rising, shifting, expanding or contracting of earth" is *per se* a "catch-all." Significantly, the policy language in *Kresge* also contained inclusive language indicating that the provision should be broadly construed. *See id.* (policy containing the phrase "include but is not limited to"). The Court finds that this comparison from *Sullivan* is therefore inapposite and cannot be determinative of the issue presented in this case.

Because the Court declines to broadly construe the Earth Movement exclusion policy to encompass unmentioned terms, the next step of the analysis is determining whether "soil vibrations" constitute "earth . . . shifting" or "earth moving" under subsections (3) and (5)(h) of the Policy.

AmFam primarily focuses on earth "shifting" and asks the Court to follow *High Street*, a case from this district in which Judge Krieger interpreted an earth movement exclusion with respect to property damage allegedly caused by the use of a vibrating compactor to compact and set the roadbed. 821 F. Supp. 2d at 1236. In that case, Judge Krieger described earth "shifting" as moving "either laterally or forward and backward compared to its neighbors," and she generally described "sinking, rising, shifting, expansion or contraction" of earth as "movement." *Id.* at 1241–42. Accordingly, she noted that "'vibrations' transmitted through the ground . . . would certainly constitute 'shifting' of the earth beneath and around the building's foundation." *Id.* at 1242. However, because Judge Krieger found that it was disputed whether vibration caused harm to the building *because of* improper compaction of the soil (as required by the

12

coverage exclusion), she determined that summary judgment on whether the loss was excluded was inappropriate. *Id.*

Pointing to *High Street*, AmFam asks the Court to consider the matter settled that "vibrations" constitute "shifting" in this district. (Doc. # 21 at 12.) While the Court has carefully reviewed *High Street* and notes the logic of Judge Krieger's analysis regarding "vibration" and "shifting," *High Street* is not dispositive of the instant issue.[2] The Court does not disagree with AmFam or Judge Krieger that earth "shifting" could reasonably be interpreted to include soil vibration. However, the Court cannot conclude that this is the *only* reasonable interpretation of "earth . . . shifting" with respect to the Policy in this case. *See Bailey*, 255 P.3d at 1051 (noting that where the question of whether coverage exists is susceptible to more than one reasonable interpretation, the coverage provisions are ambiguous and must be construed against the insurer).

Rather, the Court agrees with Plaintiffs that it is equally reasonable to interpret the Earth Movement exclusion as *not* excluding damage caused by soil vibrations induced by a collapse of a neighboring property. First, reading the exclusion as a whole, the Court notes that subsection (3) "earth sinking, rising, shifting, expanding, contracting" is listed amid a series of natural events:

> (1) **earthquake**;
> (2) landslide, rockslide, avalanche, subsidence, sinkhole, erosion, mudflow, mudslide, lahar;
> (3) earth sinking, rising, shifting, expanding, contracting;

---

[2] A decision of a federal district court judge is not binding precedent in the same judicial district, or even upon the same judge in a different case. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *see also United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020) (unpublished) ("In any event, district courts in this circuit are bound by our decisions and those of the United States Supreme Court—they are not bound by decisions of other district courts . . . .").

>   (4) the eruption, explosion, or effusion of a volcano;

(Doc. # 18-1 at 100.) Immediately after these four provisions comes subsection 5, encompassing a sub-series of man-made events or things:

>   (5) any of the following:
>   (a) site selection;
>   (b) machines;
>   (c) vehicles;
>   (d) blasting;
>   (e) mining;
>   (f) fracking;
>   (g) sequestration of carbon dioxide or any other gas, solid, or liquid;
>   (h) earth moving, excavation, fill, or compaction.

(*Id.*) The placement of subsection (3) suggests a meaning relating to earth movement caused by natural forces, such as the type of "sinking, rising, shifting, expanding, contracting" that may occur during events similar to an earthquake, landslide, or other tectonic or volcanic activity. A reasonable insured could therefore understand subsection (3) to include *only* such "earth movement" caused by natural forces—not vibrations in the soil caused by the collapse of the property next door.

Another reasonable interpretation of the Policy is that damage caused by "soil vibrations" is excluded from coverage *only if* resulting from an earthquake. This interpretation is supported by the Policy's definition of earthquake:

>   **Earthquake**. This means a shaking or trembling of the earth that is volcanic or tectonic in origin. **Earthquake** consists of one or more scientifically measurable tremors or shocks. It includes land shock waves or tremors before, during, or after a volcanic eruption.

(*Id.* at 95.) A reasonable insured, finding the only mention of vibration-like terms such as "shaking" or "trembling" to be located in the definition of earthquake, could presume that

14

damage caused by such shaking or trembling must be "volcanic or tectonic in origin" to be excluded from coverage under the Policy.

Finally, the Court also disagrees with AmFam that "earth moving" in subsection (5)(h) ("earth moving, excavation, fill, or compaction") can reasonably be understood to encompass any earth movement, such as soil vibrations. To read "earth moving" so expansively would be to render the rest of the list of defined activities, events, and items in the Earth Movement exclusion superfluous or meaningless. This the Court cannot do. *See Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 700 (Colo. 2009) (courts must "choose a construction of the contract that harmonizes provisions instead of rendering them superfluous"); *Cyprus*, 74 P.3d at 299 ("Courts should read the provisions of the policy as a whole, rather than reading them in isolation.").

In sum, the Court finds that the Earth Movement exclusion is susceptible to multiple reasonable interpretations and is therefore ambiguous.[3] *See Bailey*, 255 P.3d at 1051. Because the Court cannot conclude that an ordinary, reasonable insured, construing the Policy as a whole, would understand that the Earth Movement exclusion excludes coverage for loss caused by soil vibrations induced by the collapse of a neighboring property, the Court must construe the Policy in favor of coverage. *See id.* at 1050; *see also Cyprus*, 74 P.3d at 299 (observing that "because of the unique nature of insurance contracts and the relationship between the insurer and insured," courts

---

[3] *See, e.g.*, *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875, 887 (concluding that "both plaintiff's and defendant's readings of the clauses are reasonable" and therefore interpreting an earth movement exclusion narrowly); *Bly v. Auto Owners Ins. Co.*, 437 So.2d 495, 497 (Ala. 1983) (holding that a policy was "at best ambiguous as to whether the vibrations caused by the passing vehicles constitute 'earth movement' within the meaning of the exclusion" and should thus be construed in favor of coverage).

"construe ambiguous provisions against the insurer and in favor of providing coverage to the insured"). If AmFam seeks to exclude coverage for damage caused by *any* earth movement, including soil vibrations, AmFam's policy must clearly and specifically state as such. *See Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1262 (Colo. 1998) (where an insurer seeks to limit coverage through an exclusionary provision, the exclusion "must be written in clear and specific language").

Accordingly, Plaintiffs are entitled to summary judgment on their first claim for declaratory relief that the Earth Movement exclusion is inapplicable in this case.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment On Their First Claim for Declaratory Relief (Doc. # 18) is GRANTED. It is

FURTHER ORDERED that judgment shall enter for Plaintiffs Linda Dieter and Steven Dieter and against Defendant American Family Mutual Insurance Company on Plaintiffs' first claim for relief.

The Court finds that the Earth Movement exclusion in the Policy does not apply to the loss in this case and cannot serve to bar coverage.

DATED:  December 9, 2022

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge
